Opinion of the Court.
HOY’S heirs, who were complainants in the circuit court, set up a right in equity to the land which is the subject of controversy, under the following entry:
" December 11th, 1782— William Hoy enters 3000 acres of land, adjoining Edward Williams’ pre-emption, on Lulbegrud, on the east and south-east, and to run east and south east for quantity.”
Williams had previously obtained a certificate for a pre-emption of 400 acres, for an actual settlement in June 1779, “lying on the dividing ridge of Small Mountain creek, a branch of Licking creek, and Lulbegrud, including the said settlement;” and had located the pre-emption, by an entry with the surveyor, “ on or near the head branches of Lulbegrud, including a cabin.”
The defendants deduce title from different sources, adverse to that of the complainants, and they not only question the sufficiency of the complainants’ entry but rely on various other matters of defence, which will hereafter be noticed.
On a final hearing, the circuit court dismissed the complainants’ bill, and they have appealed to this court.
A bill in equity will not lie in behalf of a prior patentee out of possession, against a junior patentee in possession.
A certificate of survey made out by a deputy surveyor of the county where the land lies, is prima facie evidence of a survey having been executed at the time it purports to have been.
The entry in the name of William Hoy, under which the complainants claim, was before this court in the case of M’Millen vs. Miller, Hard. Rep. 494, and was then held to be a valid location. That decision must be considered as settling the principles upon which it is founded; and if we assume those principles to be correct, we are perfectly satisfied, from an examination of the record, that there is nothing in the facts of this case, which can justify a different conclusion. Contenting ourselves, therefore, with referring to the reasoning contained in the opinion delivered in the case of M’Millen vs. Miller, in support of the complainants’ entry, we will proceed to consider the other matters of defence relied on for the defendants.
1. Some of the defendants derive title under a patent in the name of Aaron Lewis, which is younger than that of the complainants, and they rely upon that matter in abatement of the suit. On this ground, the dismission of the bill, as to those defendants, was unquestionably correct ; for, as to them, the complainants had an adequate remedy at law, and of course could not resort to a court of equity for relief.
The other defendants admit that they derive title under patents elder than that of the complainants; and the first point relied on for them, which we shall notice, is, that the complainants’ entry never was in fact surveyed.
2. This point is evidently untenable. A copy of the original certificate of survey is filed in the record, and is signed by the deputy of the surveyor of the county where the land lies. As we cannot presume that an officer of the government would, in violation of law, and regardless of his duty, certify that he had made a survey, when in truth he had not done so, the certificate must be taken at least as prima facie evidence that a survey was made; and there is in the record not a single particle of proof, to rebut that evidence; on the contrary, it is fortified by the report of the surveyor in this case, who has given a diagram, to which he refers in his report, as representing the position and figure of the complainants' tract, as originally surveyed.
The next point relied on, which we shall notice, is, that the entry of the complainants had become void, because it was not surveyed in due time. The survey was made the 21st of June 1802. Hoy, in whose name *366 the entry was made, died in the year 1790, leaving the complainants his heirs at law, one of whom is an idiot ; others of them, at the death of their ancestor, were infants, and some of them were femes covert, who continued in a state of coverture, until after the survey was made.
By an act of the legislature of Virginia, passed in 1785, the surveyor of every county was required, immediately after the first day of January 1787, to give notice to all persons claiming land by entry within his county, or to their agents or attorneys, that he would proceed to survey the lands therein mentioned, on a day to be appointed by him ; and if any person so notified, failed to attend, with chain carriers and a marker, his entry became void. And it was further enacted, “ that the owners of all entries already made, shall, on or before the said first day of January, appoint some person within the county where the lands lie, as their agent or attorney, who shall give notice to the surveyor, within one month thereafter, or on failure thereof, his entry shall become void : Provided, that nothing in this or any other act shall extend to forfeit or make void any entry claimed by infants or prisoners in captivity; but that all such persons shall have three years after their several disabilities are removed, to complete the same.”
The provisions of this act were continued by the Virginia legislature, without any variation, from time to time, until the separation of this state. The last act of the Virginia legislature for this purpose, was passed at their fall session of 1790, which provides, “ that the further time of two years shall be allowed to the owners of entries on the western waters, to comply with the requisitions of the above recited act."
The legislature of Kentucky, after she became a separate state, by several enactments continued the act of 1785, without making any material change in its provisions, until their November session of 1797, when an act was passed allowing to the owners of entries the further time of ten months from the last day of November 1797, to survey the same, and which provided, “ that nothing in this or any other act shall extend to forfeit or make void any entry claimed by infants, femes covert, persons non compos mentis, or prisoners in captivity ; but that all such persons shall *367 have three years after their several disabilities are removed, to complete the same.”
The extent and application of the compact with Virginia, respecting the right of Kentucky to prolong the time of surveying entries, discussed.
It seems that all the savings in the Kentucky act of 1797, which were not in the Virginia act of 1785, are void, where they operate to the prejudice of other Virginia claimants; but valid as far as they operate to the prejudice of the state of Kentucky only.
*367 This was the last act which has been passed in relation, to this subject; and if the right of the complainants to make their survey, be tested by the provisions of this act, it will be found to be incontrovertible; for as one of them is an idiot, and others of them were femes covert, not only when the time allowed by the act for surveying entries expired, but continued so, until after their survey was made, their right to survey was clearly saved by the proviso just recited. But if their right to survey be tested by the provisions of the act of Virginia of 1785, it most obviously cannot be sustained ; for it is not pretended, that the requisitions of that act had ever been complied with by them or their ancestor, and the saving of that act only extending to infants and prisoners in captivity, and not to femes covert or to persons non compos mentis, the complainants have clearly not shown themselves to be within it. It is true, that they prove that some of them were infants, in the year 1790, when their ancestor died; but to show that they were within the saving of the act, they ought to have proved that they continued in a state of infancy until within three years of the time when the survey was made, and this they have wholly failed to do. The question then occurs, whether the right of the complainants ought to be tested by the act of Virginia of 1785, or by that of this state of 1797 ?
3. There would be no difficulty in pronouncing the latter to be the rule of decision, if the legislature of this state possessed an unlimited power of legislation over the land titles of the country. But they possess no such power. The compact of separation between Virginia and the then district of Kentucky, which is incorporated with and makes a part of the constitution of this state, provides “ that all the private rights and interests of land within the said district, derived from the laws of Virginia prior to such separation shall remain valid and secure, under the laws of the proposed state, and shall be determined by the laws now existing in this state”
According to the literal import of the latter part of this stipulation, the legislature of this state would seem to possess no more power to alter or change the laws of Virginia in any case, for the purpose of saving *368 a right than they would for destroying it. But this would be a construction contrary to the spirit of the stipulation, if the power were exercised to save the right of an individual in a case where the commonwealth was alone interested ; for in that case, if the right of the individual were extinct, the land would belong to the commonwealth, and it would be absurd to suppose that Virginia intended to restrain this state from disposing of its own lands as it might choose. But where there are adverse rights, derived from the laws of Virginia, to change those laws for the purpose of saving the right of one individual at the expense of the right of the other, would be no less repugnant to the spirit than it is to the letter of the stipulation. In such case, the laws of Virginia, and not the laws of this state, must furnish the rule of decision. It is evident, therefore, that the complainants have shewn no right to survey any part of the land in controversy, to which the defendants have a title, derived from the laws of Virginia prior to the separation. Trimble's heirs appear to be in this situation. Their patent is not indeed filed, but the complainants profess to be ignorant whence the defendants derive title, and call upon them to state the nature of their titles ; and Trimble’s heirs in response, allege that they derive title under a patent which issued in 1786, and their response, we apprehend, must be taken as true. The other defendants, however, though they admit that they claim under grants elder than that of the complainants, do not state the date of those grants, and notwithstanding the entries under which they claim, appear to have been made under the laws of Virginia, yet they are unsupported by the proof in the cause. For aught, therefore, that appears to the court, the land claimed by them may have been covered by no other title than that of the complainants, at the date of the separation of this state from Virginia, and of course, the legislature of this country might, without any violation of the compact with Virginia, make any law to save the right of the complainants.
But those defendants have still other matters of defence upon which they rely. The defendants, Stewart and Ferguson, allege that they hold under an entry, survey and patent of 400 acres, in the name of Edward Williams, and they deny that the entry and sur *369 vey of the complainants, interfere with the land held by them. There are in the record two entries in the name of Edward Williams, for 400 acres. The one is his settlement entry, on which the complainants’ entry depends, and the other is a poor right entered in his name as assignee of Absalom Crook. Which of these is the claim under which Stewart and Ferguson holds cannot be ascertained by any thing in the record, nor is it material which we assume to be the one, for there is nothing to shew that there is an interference between either of those claims and that of the complainants. The entry or survey of Williams, as assignee of Crook, is not delineated on the connected plat, and its position cannot be ascertained; of course, we could not be justified in saying that there was any interference between it and the claim of the complainants. The entry of Williams’ pre-emption being that on which the complainants’ entry depends, there can be no interference between them; and although the survey of Williams as delineated on the connected plat, does not appear to have been made in conformity to his location, yet the survey of the complainants is made to bind on that of Williams, and consequently there can be no interference between them.
It results, therefore, that the complainants have not shewn themselves entitled to a decree against Stewart and Ferguson, and that the bill was properly dismissed as to them.
The defendants, Cooper and Whit, claim under a patent in the name of Walter Chiles, for 500 acres, and the defendants, Alexander and Marshall, under a patent in the name of William Chiles, for the same quantity.
Those defendants allege, that Samuel M’Millen was entitled to apart of the entry of the complainants as locator ; that after the death of Hoy, M’Millen and others, to whom he had sold parts of his interest, procured a division to be made between them and the complainants, which division, with some alterations, was afterwards confirmed by the complainants, and that the part allotted to M’Millen and his vendees includes the land claimed by those defendants, and they plead and rely on this matter in abatement and in bar of the suit.
Partners in rights to land, must all be parties in a suit against an adversary claimant; and if all do not join, the bill must be dismissed, but without prejudice.
4. The defendants prove that Hoy, the ancestor of the complainants, Lawrence Thompson and M’Millen were in partnership in making locations of land, and that the entry under which the complainants claim, was one of those which were made in partnership; but there is no evidence of the division which the defendants allege to have been made between M’Millen and those claiming under him, and the complainants.Notwithstanding however, these defendants have failed to establish the alleged partition, they have shewn enough to abate the suit as to them; for if, as they prove, M’Millen and Thompson were partners in the location of the entry with Hoy, and they have never released their interest, of which there is no evidence, they must still remain joint owners of the entry with the complainants, and according to the settled rules of practice in chancery, they ought to have been parties to the suit. Consequently the bill was properly dismissed as to these defendants, for want of the necessary parties ; but according to the repeated decisions of this court, in like cases, the dismission ought to have been without prejudice to another suit.
The decree, therefore, must be affirmed with costs, to all the defendants except Cooper, Wyat, Jameson, Marshall and Alexander, and as to them it must be reversed so far as the dismission is absolute, and they and the complainants must pay their respective costs in this court, and the suit must be remanded that a decree may be entered dismissing the bill with costs, but without prejudice to another suit against those defendants.