Opinion of the Court, by
Judge Minns.
THIS is a conflict between adverse entries, the complainants having, by their bill; asserted, the 'superior equity, which, was resisted by the defendants. The court belowr decided in favor of the complainants, and-the merits of the respective claims ave now, presented for our consideration.
The entry set up, by the complainants, reads as follows:
1789, ,fpn7-15/7t.--rlsaap Ejite enters one thousand one hundred and-sixty-three and threp-fourth acres of land, on the waters ofBeargrass, beginning, at a poplar, ash and red- oak, south-west, corner of. Ábrahafn. Hite’s settlement, assignee of Ben and. Hannah Linn, and running with a line thereof, and the linq.of his preemption, north, along a.marked line, to a. red-oak, hickory and beech, corner to a, survey, made for James F, Moore; then with his line N. 37; W. to his corner in Southall and Charlton’s line; thence with the.ir marked line S. 53 W. to their corner, (elm, ash and two white, oaks); thence to the south-east corner of Byrd’s, one thousand acre survey, being four ash trees; thence S. 53 W. with his line, to the corner of John May’s three, hundred and fifty acre survey, elm and two beeches; thence with his line S. 37 E. and the course continued^ untjl a line run east from the end thereof, and a linó *60 from the beginning, running south, will include the quanüty. on a Treasuvy warrant No. 15,229.”
(l),The calls fonsurve? •wherethey have been so long made them may have been obtained; arepro ye'd to have acquit-ed notoriety; owhers'resid-ed on themj are good to givethe entry notoriety, ’■
(2) The statute of Ken-1 tacky extending the time for making surveys to the last of September, ’yli, was general ; 'therefore, the right to make a Survey before that time, need not be averred.
Otherwise as to those claims under surveys made after Sept. 1798; for the time was ex tended after that date, in favor of certain person's only; and he who relies.on an exception, must aver and prove it — At.
We have seldom seen as accurate description in an entry, as this contains. The objects Ciiiled for, all existed at its date, situated precisely as described, and l^le ^'dhig of any one, must certainly have led the enquirer to the position of the rest, and the survey is ex-eculed in precise conformity with the calls of the entry,
(1) The next thing required is notoriety, and this is not wanting, borne pi the surveys called lor, were made near fifteen years before, and the youngest, not Jess than twp years; sp that copies could be had. Some °f them, according to the proof, had acquired notoriety, and on others, the owners or persons holding under thgm? resided at the date of this entry; so that notoriev ty m¿st be presumed; and an enquirer in tlig neighborhood, where the lands were settled, could not have failed to find the objects. This entry must, therefore, be again held valid, as was be id before by this court, on two former occasions. See Potorf, &c. vs. Fishback, &c. 2 Marsh. 171; Meriwether vs. Hile's heirs, ibid 181.
(2) But it has been contended before this court, that the. survey of the complainants was not executed in the time prescribed by law, and that they have not shown a right to survey, after the time bad elapsed. The survey was made oh the 15th November, 1797, and the time for making surveys generally, was extended by the Legislature of Kentucky, to the last day of September, 1798. It was not neepssary, therefore, for the complainants to show an exception in their favor, author-ising theirsurvey at that time, cither-in their pleadings or proof, though after the limited- time had expired, according to former decisions of this court, it is necessary in the pleadings to show an exception admitting the survey, according to (he well known gene ral rule, that he who relies on an exception, must aveifand prove it,
(3) But it is further urged, that notwithstanding the time for making surveys was'extended, yet the compact with Virginia forbade the extension to the prejudice of existing rights, according to the doctrine intimated by the court, ia the first opinion of Hoy's heirs vs. M'Murray, &c. 1 Litt. Rep. 364; which opinion was afterwards reviewed, and that branch of the cause went off on another point, without denying or affirming the principles first'delivered. Whether these principles are of *61 are not sound, we need not now enquire; for we hold it indispensable for the defendant in such case, to aver and show what were his rights at the date of the compact, before he can make the question. He must make it appear, that his right was then vested and complete, so as not to be subject to legislative power, and that the extension of the time of surveying, tended to divest him of that right. This the defendants here have not done-. Whether their patent existed at the date of the compact or emanated since the survey of the complainants, 'does not appear, either in pleadings or proof. It may be said that they, or those under whom they claim, had an entry at that time,. If so, is the entry valid, and does it cover the ground? If it is, as it is elder than the complainants, th.er,e will be no necessity for taking shelter under the compact. This leads us into an inquiry into the merits of their entry, which has been seriously pressed, both on this and the inferior court, as valid, aqd was held invalid by that court, The original entry reads thus:
(3) The decision against the validity of the statutes extending the time for making surveys, contained in the first opinion in the case of Hoy’s heirs vs. M’Murray, noticed, but neithér affirmed nor overruled.
The question can arise only where the party resisting a claim thus surveyed, shows he had a vested right, not subject to Id-gislative power.
The party in this case, having at the date of the compact neither a grant nor valid entry, iannot make the question.
S. Beall’s amended entry.
“ 1781, March 15.- — Samuel Beall enters six thousand acres, upon six Treasury warrants, within the following boundaries, viz. To begin at Preston’s corner, in a line of Byrd’s one thousand acre survey, on the. south fork of Beargrass; thence south, till said line crosses Fern creek, one mile; then towards Floyd’s Fork, as nearly the same distance from the creek as' can be run; then to begin again at the first mentioned corner, and to run with said Byrd's line, to his south-west corner; then along his line to Southall and Charlton’s corner; then east, towards Floyd’s Fork, as far as is necessary to include the quantity, taking the first vacant land nearest the first mentioned line, for the beginning, and taking in all the vacant land between any prior claims, within the said bounds, and to rqn until the quantity is obtained.”
On the 14th day of February, 1783, this entry was amended to read as follows:
“ Samuel Beall makes the following amendment to his entry of six thousand acres, made the 15th of March, 1781, on the waters of Beargrass and Fern creeks, adjoining the land of William Preston, William Byrd, and Southall and Charlton, to wit: To run from the’said beginning corner a south course, to Fern creek; and ihenpeto-bp bounded southwardly by the said creek, *62 and the lines of Sámpson Matthews, to his north-easi corner 0f hig upper survey; and tobe bounded nortli-wardly and east wardly by the said Byrd?s lines, to the j¡nes 0f John May’s three hundred and fifty acre survey, and with the lines thereof to Nicholas Meriwether’s lines, and with the same to his most south-westwardly corner; thence binding on the lines of D. Broadhead, James Sullivan, John May and Abraham Hite; then to run out, southwardly, binding on the said Matthews’ east end, for quantity.”
;•!) This on-o^Hin^far1 some'object» sufficiently notoriousan<l tnvalid*for6 1 íhc insuffi-;ieocy of the ot.ieroa s.
■ 5) Calls for surveys mads bullíalo more than — * try, notpróv» ed to have been notori-c¡ent.115U
*62 (4) Beargrass, Fern creelc, Byrd’s, and Southall and Charlton’s surveys, were sufficiently known, probably at the date of the original, and, at aíl events, at the date of this amended entry, to be good locative calls; and part of the objects intended, by this entry, could have been found. Are these enough to sustain it, without 'he rest? and can the rest be found?- They are not sufficient without the rest. Although Fern creek may be relied on as the general southern, and Byrd, and South-ajj and Charlton, as the northern boundary, from their relative position to each other; yet the position of the survey may be varied and changed so far eastwardly or westwardly, as totally to omit, or to render it doubtful* whether it includes the land in controversy. Some of the rest of the calls must, therefore, be found or (he eii-. try must fail.
Here we meet with a difficulty at the threshold, h\ finding the point of beginning; which point, must fix the western boundary. Two surveys, in the name of Preston, are laid down in the connected plat, adjoining Byrd, one called a military survey of one thousand acres, and the other of one hundred acres, on Treasury warrant, One of the witnesses speaks of being informed of Preston’s military survey of one thousand ac'rqs, at an early date; but he does not know its position, o? attempt to identify it, and we have no title paper filed-, proving there was such claim of any kind. Hence its existence or its position, is not made out in proof, A plat and; certificate of Preston’s one hundred acres, is filed-; but tlie survey was made more than two years after the date of the amended entry. This could not, therefore^ be the survey intended by the call.
(5) N we cou^ remove this difficulty, others arise, The southern boundary of the survey, is to be Fern creek and Sampson Matthews’. His surveys are fifed, *63 ánd were both made but little more than one month before the amended entry. They might have been in the pocket of a deputy surveyor, in the indigested form of held notes. No copy of them could be had, and theré is not the slightest proof of their actual notoriety, it may how be ascertained what portion of land they cover, and how far they remove the defendant’s entry from joining Fern Creek; but there was no means of ascertaining this at the date of the entry, and the position of these claims might materially affect the position of the defendant’s survey.
[6] The en-toes called fiied^The surveys made upon them af-one month before, will not ava^‘
[7] The chan--ccllor cannot the olt' ¿nd disre- ’ garding all ? "“j °8’’ an’cw entry,
Breckinridge and Liltell, for plaintiffs; Hardin, Crii-ienden and Úaggin, for defendants.
(6) If we go back to the beginning, and pursue the lines of Byrd and Southall and Charlton, we are met by a survey or entry in the name of John May, of three hundred and fifty acres, which we must avoid. The position of this claim is important, as it is in the immediate neighborhood of the land in dispute. No entry in the name oí John May, is filed. His survey is filed, and was made four years after the date of this amended entry, and although it was early enough to be a good locative call to the complainants, it did not exist at the date of the defendant’s claim. Nicholas Meriwether, D. Broadhead, James Sullivan, John May and Abraham Hite, are to bound the eastern part of the survey. No entries are filed in the name of either of these persons. The surveys of Meriwether, were net made until 1789, John May’s in 1787, D. Broadhead’s in 1790, Sullivan’s was not made one month before the date of the amended entry, and was unknown. The only surveys of Hite, on file, were made, one of them about four days after the amended entry, and the other about as many months.
(7) Under such circumstances, there is no possible mode of sustaining'this entry, or showing that it covers the land in controversy, unless we could take the objects proved, and by construction make out a new entry, disregarding all those not established, which is contrary to repeated decisions, and the well settled doctrines of this court; and the court below did right in deciding against it, notwithstanding the sanguine manner in which its supposed validity was pressed upon that court in a petition for a re-hearing, which is relied on here, as containing decisive arguments for the defendants below.-The decree is, therefore, affirmed with costs.